**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**ANDREW CLUCK,**

> **Plaintiff,**

> **v.**

**BRENTLINGER ENTERPRISES, INC. dba
MIDWESTERN AUTO GROUP, *et al.,***

> **Defendants.**

**Civil Action 2:22-cv-290**

**Magistrate Judge Elizabeth P. Deavers**

## OPINION AND ORDER

This matter is before the Court to consider Motions for Summary Judgment filed by
Defendants Brentlinger Enterprises dba Midwestern Auto Group (misidentified as Brentlinger
Enterprises, Inc. in the Complaint) ("MAG") and Kirby Morrow ("Morrow") (ECF No. 43) and
Defendant Richard Hertenstein ("Hertenstein") (ECF No. 44) (collectively, "Defendants").
Plaintiff Andrew Cluck has filed one joint response directed to both motions (ECF No. 47) and
Defendants have replied (ECF Nos. 51, 52). For the following reasons, the Motions for
Summary Judgment (ECF Nos. 43, 44) are **DENIED without prejudice** to refiling.

## I.

Plaintiff asserts various employment-related claims under Title VII and Ohio law,
including for discrimination, sexual harassment, hostile work environment, retaliation, and
constructive discharge. He also asserts a claim for the intentional infliction of emotional distress.
Plaintiff's claims arise from alleged discrimination based upon his Japanese heritage and the
inappropriate conduct of Defendant Hertenstein. Plaintiff seeks compensatory and punitive
damages as well as equitable relief. All Defendants have moved for summary judgment,
contending that Plaintiff's Complaint is barred by the doctrine of judicial estoppel because

1

Plaintiff failed to disclose his potential employment-related claims in his bankruptcy proceeding. Defendant Hertenstein also asserts that summary judgment is appropriate because the bankruptcy trustee, and not the Plaintiff, is the real party in interest.

## II.

### A.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The burden of proving that no genuine issue of material fact exists falls on the moving party, "and the court must draw all reasonable inferences in the light most favorable to the nonmoving party."  *Stransberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (citing *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'"  *Kimble v. Wasylyshyn*, 439 F. App'x 492, 495 (6th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317-324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record").  "The nonmovant must, however 'do more than simply show that there is some metaphysical doubt as to the material facts,'. . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a 'genuine' dispute."  *Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (citations omitted).  In considering the factual allegations and evidence

presented in a motion for summary judgment, the Court "must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

## B. RELEVANT FACTS

For purposes of the current motions, the following relevant facts are undisputed. Plaintiff filed this action on January 25, 2022, and attached a copy of his right to sue letter dated November 1, 2021. (ECF No. 1.) That right to sue letter related to an EEOC charge dated December 18, 2019. (ECF No. 43 at 72.) The EEOC charge reads as follows:

> I am an Asian-American of Japanese descent and identify as a Japanese-American male. I began working for Respondent in 2017 as Service Advisor. As of today, I am currently still employed by Respondent, but I have recently taken a Leave of Absence due to job-related stress conditions.
>
> In January 2019, Respondent promoted me to an Aftersales Manager. Soon after the promotion, I overheard my manager, Kirby Morrow – the Director of Fixed Operations – make several discriminatory statements regarding other ethnicities. For example, Mr. Morrow referred to clients as "Orientals" and expressed that he would not call back some of the Indian clients because "they can barely speak English."
>
> My race and national origin is not a topic I normally discuss while at work. In July 2019, Mr. Morrow was informed for the first time that I am Japanese. A week later, I was informed by another employee that Mr. Morrow intended to demote me. In August 2019, Mr. Morrow in fact demoted me back to a Service Advisor with no reasonable justification. Respondent demoted me and hired a Caucasian male, Rich Hertenstein, to take over my previous management position. Mr. Hertenstein therefore became my superior.
>
> Mr. Hertenstein soon began to sexually harass me and create a hostile working environment. On several occasions, Mr. Hertenstein grabbed my crotch (penis) and buttocks and laughed, telling me he did it as a "joke." I told Mr. Hertenstein that the touching was not welcomed yet he continued to do it. I also overheard Mr. Hertenstein refer to me as a "Jap," a controversial ethnic slur among Japanese Americans. I timely reported both Mr. Morrow and Mr. Hertenstein's conduct through Respondent's proper channels. Nothing was done by Respondent to correct their egregious conduct.

On November 8, 2019, Respondent demoted me again, this time to a Writer position where I would earn one-half of my original salary. On November 9, 2019, I requested a Leave of Absence due to the hostile work environment and discrimination I was facing during my employment with Respondent.

I believe Respondent has discriminated against me due to my race and national origin, has sexually harassed me, and has retaliated against me for reporting such conduct because: (1) I was qualified to perform all the essential duties and functions for the position of Aftersales Manager, but I was unreasonably demoted from my position soon after Mr. Morrow discovered my race/national origin; (2) I was qualified to perform all the essential duties and functions for the position of Service Advisor, but I was unreasonably demoted from my position soon after my race/national origin was discovered, and I reported discriminatory treatment; (3) Mr. Hertenstein subjected me, on more than one occasion, to unwelcomed sexual touches and jokes that interfered with my work performance and created an intimidating, hostile and offensive work environment; and (4) Respondent is in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000 and Revised Code 4112.02(A), as it discriminated against me through demotion, harassment on the basis of race and national origin, sexual harassment, and retaliation for engaging in protected activity.

(*Id.*) Plaintiff's claims rely on the above allegations. As relevant to his constructive discharge claim, Plaintiff alleges in his Complaint that he was constructively discharged on November 12, 2019. (ECF No. 1 at ₧ 17.)

On November 15, 2019, Plaintiff filed a voluntary bankruptcy petition pursuant to Chapter 13 in the United States Bankruptcy Court for the Southern District of Ohio, Case No. 2:19-bk-57402. (ECF No. 43 at 13-71.) Plaintiff was represented by attorney Bryan C. Barch. (*Id.* at 51.) Plaintiff sought to discharge $145,733.00 in liabilities. (*Id.* at 20.) Question No. 33 on the Schedule A/B asked Plaintiff to identify "Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment. *Examples: Accidents, employment disputes, insurance claims, or rights to sue."* (*Id.* at 25.) Plaintiff filled in the box indicating "No." (*Id.*)

On February 25, 2020, Plaintiff amended his bankruptcy schedules but did not amend his Schedule A/B to include the claims underlying this lawsuit. (ECF No. 43 at 74-85.) On August 3, 2020, Plaintiff converted his Chapter 13 filing to a Chapter 7 filing. (*Id.* at 95.) On August 8,

2020, Plaintiff again amended his bankruptcy schedules but did not amend his Schedule A/B to include the claims underlying this lawsuit. (*Id*. at 99-103.)

On September 10, 2020, a 341(c) hearing was conducted. (Affidavit of Attorney Bryan Barch, ECF No. 43 at 107, ⁋ 2; *see also* ECF No. 20, "Barch Aff.") Plaintiff attended the hearing along with Mr. Barch and the bankruptcy trustee, attorney Jim Coutinho. (*Id*.) At the hearing, Mr. Coutinho questioned Plaintiff under oath regarding his assets, liabilities, and other relevant matters. (*Id*. at ⁋ 3.) Plaintiff informed Mr. Coutinho of the then pending EEOC charge. (*Id*.) Mr. Coutinho "received testimony about the EEOC claim." (*Id.*) Following the hearing, Mr. Coutinho declined Mr. Barch's offer of additional information regarding Plaintiff's EEOC charge and stated, via email, that he was filing a "'no asset report.'" (*Id*. at ⁋ 4, Exhibit 1.)

The Bankruptcy Court docket entry dated September 18, 2020, states:

Meeting of Creditors Held and Chapter 7 Trustee's Report of No Distribution: I, James A. Coutinho, having been appointed trustee of the estate of the above-named debtor(s), report that I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed R Bank P 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered. I request that I be discharged from any further duties as trustee. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 2 months. Assets Abandoned (without deducting any secured claims): $ 21959.00, Assets Exempt: $ 3750.00, Claims Scheduled: $ 153833.52, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): $ 153833.52 Debtor appeared. (Coutinho, James) (Entered: 09/18/2020)

(Case No. 2:19-bk-57402.)[1]  On November 18, 2020, the Bankruptcy Court entered the Order of

Discharge.  (ECF No. 43 at 105; *see also* Case No. 2:19-bk-57402, ECF No. 45.)  On December

10, 2020, the Bankruptcy Court closed Plaintiff's case.  (Case No. 2:19-bk-57402.)

## C.  DISCUSSION

As noted above, all Defendants contend that they are entitled to summary judgment

because Plaintiff's claims are barred by the doctrine of judicial estoppel.  Defendant Hertenstein

also contends that summary judgment is appropriate because the bankruptcy trustee, not Plaintiff,

is the real party in interest for purposes of this lawsuit.  Because Defendant Hertenstein raises a

"threshold question," the Court turns first to the matter of the real party in interest.  *Auday v. Wet

Seal Retail, Inc.,* 698 F.3d 902, 904 (6th Cir. 2012).

Causes of action existing before the commencement of a bankruptcy proceeding belong

to the bankruptcy estate.  11 U.S.C. § 541(a)(1).  And, debtors must "disclose any potential claim

as an asset to the bankruptcy court in a schedule of assets and liabilities." *Davis v. Fiat Chrysler

Autos. U.S., LLC*, 747 F. App'x 309, 314 (6th Cir. 2018); *see* 11 U.S.C. § 521. "[E]very

conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative,

is within the reach of § 541."  *In re Blasingame*, 986 F.3d 633, 638 (6th Cir. 2021) (citations

omitted).  Further, [w]hile § 541 dictates what interests are property of the estate pursuant to

federal bankruptcy law, the "nature and extent of [the] property rights . . . are determined by the

'underlying [] substantive law.'"  *Id*.  (citations omitted).

---

[1] The Court takes judicial notice of the docket sheet and entries in Plaintiff's bankruptcy case, a public record of the United States Bankruptcy Court of the Southern District of Ohio.  *See, e.g., Overton v. Tennessee*, 590 F. Supp. 3d 1087, 1089 n.1 (M.D. Tenn. 2022) (taking judicial notice of docket of state court proceedings in federal habeas case).

6

Ordinarily, discrimination claims accrue when the plaintiff knows or should know of the discrimination; that is, the claim accrues at the time of the discriminatory act. *Holmes v. Novo Nordisk Inc*., No. 2:21-CV-1194, 2022 WL 950015, at *2 (S.D. Ohio Mar. 30, 2022) (involving, in part, state law discrimination claims under Ohio Rev. Code § 4112.01, *et seq*.); *see also Black v. Columbus Pub. Sch.,* 211 F. Supp. 2d 975, 980 (S.D. Ohio 2002), *aff'd,* 79 F. App'x 735 (6th Cir. 2003) (holding a cause of action under Title VII accrues, … at "the time of the *discriminatory act,* not the point at which the *consequences* of the act become painful."). Here, Plaintiff alleges acts of discrimination occurring no later than November 12, 2019. (ECF No. 1 at ⁋ 45 alleging that Plaintiff "left work with MAG" on November 12, 2019.) With respect to his claim of intentional infliction of emotional distress, such a claim under Ohio law accrues when a Plaintiff "suffers severe emotional distress as a result of the defendant's wrongful actions." *Nilavar v. Mercy Health Sys.-W. Ohio*, 495 F. Supp. 2d 816, 821 (S.D. Ohio 2006), *aff'd,* 244 F. App'x 690 (6th Cir. 2007). Plaintiff alleges that his emotional distress claim arises from the actions of Defendant Hertenstein and, in part, led to his leaving MAG on November 12, 2019, never to return, because he was "severely depressed, depleted, and incapable of performing his job functions." (ECF No. 1, at ⁋ 45; ⁋⁋ 72-77.)[2]

In short, the alleged actionable conduct occurred before Plaintiff filed his bankruptcy petition, and thus became property of the estate when he filed for bankruptcy three days later.

---

[2] The Court notes Plaintiff's attempt in his Response to recharacterize his claims as arising from an actual discharge date of February 4, 2020. (ECF No. 47 at 5 "Cluck was not terminated from his position with MAG **until February 4, 2020.**" (double emphasis supplied by Plaintiff)). Aside from the fact that such a contention may preclude a "constructive discharge" claim, it is wholly inconsistent with the allegations of Plaintiff's Complaint and Plaintiff has made no request to amend. Further, and significantly, as Defendant Hertenstein highlights, accepting February 4, 2020, as the accrual date of Plaintiff's claims would render baseless the underlying EEOC charge filed December 18, 2019.

As a result, absent abandonment, the trustee is the real party in interest here. *Kimberlin v. Dollar Gen. Corp.,* 520 F. App'x 312, 314 (6th Cir. 2013) (confirming that what is frequently characterized by courts as a standing problem "—whether a debtor or only a bankruptcy trustee has the right to prosecute legal claims related to the bankruptcy estate—is better characterized as a real-party-in-interest question governed by Rule 17."); *see also In re Bard*, 49 F. App'x 528, 529 (6th Cir. 2002) ("Upon conversion of the Chapter 13 bankruptcy proceeding into a Chapter 7 matter, the bankruptcy trustee became the real party-in-interest").

Stated another way, without evidence of abandonment, it is the trustee that has the capacity to sue or be sued. *Barefield v. Hanover Ins. Co.,* 521 B.R. 805, 809 (E.D. Mich. 2014). "[A]bandonment requires the Trustee to give notice to the creditors and, if any object, the bankruptcy court must hold a hearing." *Auday*, 698 F.3d at 905 (citing 11 U.S.C. 554 (a)).[3]

---

[3] Defendant Hertenstein explains that Local Bankruptcy Rule 6007-1 provides for limited service of notice of abandonment in Chapter 7 cases and that subsection (b)(1) "specifically discusses the § 341 meeting in this context." (ECF No. 44 at 6.) The Local Rule provides that "[t]he § 341 meeting notice shall inform creditors and other parties in interest that the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." (*Id.*) Defendant Hertenstein further states that "subsection (c) provides additional options for a party desiring abandonment, including a written request to the trustee and, if denied, a motion to compel." (*Id.*)

It appears that Defendant Hertenstein may be citing the Local Bankruptcy Rules effective October 1, 2020. The Local Bankruptcy Rules in effect at the time of Plaintiff's § 341 meeting held on September 10, 2020, stated that *"the trustee may abandon property listed on the debtor's schedules* upon the request of any party in interest or upon the trustee's determination that there is no equity in the property for the benefit of unsecured creditors and that the property is burdensome. Further notice to creditors and other parties in interest is not required for the abandonment of any property unless a party in interest, before the conclusion of the § 341 meeting, files a request for further notice of abandonment with service of such notice on the trustee, or unless further notice is ordered by the court or required by the trustee." Local Bankruptcy Rule 6007-1, effective November 1, 2016 (emphasis added). The Notice of Meeting of Creditors in Plaintiff's bankruptcy case contained this language. (Case No. 2:19-bk-57402, ECF No. 30-1 at ⁋ 13.) This applicable language further supports the conclusion that, because Plaintiff did not schedule his claims, there is no evidence of the trustee's abandonment.

There is no evidence that this happened here.  Further, the claims could have reverted to Plaintiff if he had listed them on his schedule of assets and if the bankruptcy court had closed the case without disposing of them.  *Id.* (citing 11 U.S.C. § 554(c)).  There is no dispute that this did not happen here.  "[P]otential claims that a debtor does not properly schedule are inherently unadministered and 'remain[ ] property of the estate in perpetuity.'"  *Litton Loan Servicing, L.P. v. Schubert*, 631 B.R. 868, 876 (N.D. Ohio 2021), *aff'd sub nom. In re Schubert*, No. 21-3969, 2023 WL 2663257 (6th Cir. Mar. 28, 2023) (quoting *Darrah v. Franklin Credit (In re Darrah)*, 337 B.R. 313, 316 (Bankr. N.D. Ohio 2005) (citing 11 U.S.C. §§ 554(c), (d)).  This is true even if, as Plaintiff alleges here, the trustee had knowledge of the asset.  *In re Wright*, 566 B.R. 457, 463 (B.A.P. 6th Cir. 2017); *see also In re DeGroot*, 484 B.R. 311, 320 (B.A.P. 6th Cir. 2012) (same).  Thus, here, even though Plaintiff's Chapter 7 estate has been fully administered, Plaintiff's employment-related claims remain part of the bankruptcy estate.  Accordingly, Plaintiff is not the real party in interest.

Defendant Hertenstein contends that, because Plaintiff is not the real party in interest, summary judgment is warranted as to all of Plaintiff's claims.  Plaintiff has failed to respond to this argument.  Such a failure to respond has been found sufficient to support summary judgment in a defendant's favor.  *See, e.g.*, *Kolesar v. Allstate Ins. Co.,* No. 1:19 CV 35, 2019 WL 2996047, at *2 (N.D. Ohio July 9, 2019), *aff'd,* 814 F. App'x 988 (6th Cir. 2020) (plaintiff did not respond to argument regarding lack of standing and court granted summary judgment on that basis alone).  In *Kolesar*, however, the Court considered the issue to be one of standing.  Here, as discussed, the Court has aligned with the cases concluding that the issue is not one of standing but whether the trustee is the real party in interest.  *Kimberlin*, 520 F. App'x 312, 314.

Defendant Hertenstein recognizes as much in relying on Federal Rule of Civil Procedure 17(a)(3) as the basis for his argument. That Rule states:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Fed. R. Civ. P. 17. "The Advisory Committee Notes explain that the overarching purpose of the provision is to protect against 'forfeiture and injustice.'" *Auday*, 2013 WL 2457717, at *5 (citing Fed.R.Civ.P. 17, Adv. Comm. Notes (1996)).

Despite the plain language of Rule 17, some courts have recognized that "it does not apply to every case brought by an inappropriate plaintiff." *See, e.g., Barefield* 521 B.R. 805, 810 (citing cases holding that when the proper party is not difficult to determine and there has been no understandable mistake, dismissal is warranted despite the language); *see also Van Sickle v. Fifth Third Bancorp*, No. 12-11837, 2012 WL 3230430, at *3 (E.D. Mich. Aug. 6, 2012) (dismissing because it was "clearly established" that the bankruptcy trustee was the real party in interest for the plaintiff's pre-bankruptcy claims, the determination of the proper party was not difficult and the plaintiff did not make an excusable mistake that warranted application of Rule 17(a)(3)); *Rodriguez v. Mustang Mfg. Co.,* No. 07-CV-13828, 2008 WL 2605471 (E.D. Mich. June 27, 2008) (dismissing because two years had passed since the plaintiff's bankruptcy was closed and the plaintiff did not make a reasonable mistake in pursuing the action under his own name where the law "clearly demonstrated" that the trustee was the real party in interest).

At the same time, however, Rule 17's language has been interpreted by some courts to warrant consideration of alternatives to dismissal when a trustee has been determined to be the real party in interest and, in particular, where the possibility exists that creditors may be

10

precluded from recovery. *See, e.g., Knight v. New Farmers National Bank*, 946 F.2d 895 (Table), 1991 WL 207056 (6th Cir. 1991) (holding that the district court erred in dismissing the plaintiff's claim without first considering ratification or substitution by the trustee); *Wieburg v. GTE Sw. Inc.,* 272 F.3d 302, 309 (5th Cir. 2001) (concluding that where dismissal meant creditors will have no possibility of recovery, it was an abuse of discretion for the court to dismiss the action without explaining why less drastic alternatives were inappropriate); *see also Bauer v. Com. Union Bank, Clarksville, Tennessee,* 859 F.2d 438, 442 (6th Cir. 1988) (noting an inability "to detect so much as hint of any abuse of discretion where district court had permitted substitution of trustee). Indeed, as one court has recognized, "[w]hen forfeiture of a claim is a distinct possibility, a court may commit reversible error if it fails to provide the real party in interest an opportunity to ratify, join, or substitute." *Russ v. Jackson Cnty. Sch. Bd.,* 530 F. Supp. 3d 1074, 1083 (N.D. Fla. 2021).

Here, dismissal may have an impact on Plaintiff's creditors. This is because, at least with respect to Plaintiff's Title VII claims, the statute of limitations has expired, presumptively precluding the trustee from asserting those claims in a subsequent action.[4] For this reason and

---

[4] As explained by the court in *Ulmer v. Dana Driveshaft Mfg., L.L.C.*, No. 3:12-CV-01266, 2012 WL 5830476, at *2 (N.D. Ohio Nov. 16, 2012):

> Under Title VII, a plaintiff must file suit within 90 days of receiving a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e–5(f)(1). "[T]he filing of a complaint which is later dismissed without prejudice does not toll the statutory filing period of Title VII." *Wilson v. Grumman Ohio Corp.*, 815 F.2d 26, 28 (6th Cir. 1987). A dismissal without prejudice leaves the parties in the same place "as if the suit had never been brought." *Id.* at 27. Further, district courts are without authority to extend a statutory period of limitations. *Id.* at 28; *see also, id.* at 27 ("in the absence of a statute to the contrary a party cannot deduct from the period of the statute of limitations the time during which the action so dismissed was pending") (citing *Bomer v. Ribicoff*, 304 F.2d 427, 429 (6th Cir. 1962)).

keeping in mind the concerns of forfeiture and injustice, the Court finds it is a better exercise of discretion to consider alternatives short of dismissal at this juncture.[5]  It is likely under the circumstances, however, that the trustee of Plaintiff's bankruptcy estate is unaware of the current case.  Accordingly, pursuant to Rule 17(a)(3), the Court will afford the trustee notice and a reasonable opportunity to "ratify, join, or be substituted into the action."  Of course, the trustee is not compelled to take any of these courses of action.  Indeed, the trustee may determine that the claims are not worth pursuing.  Nevertheless, the Court leaves that decision to the trustee.  *See, Russ*, 530 F.Supp. 3d 1074, 1083.

## IV.

For these reasons, the Motions for Summary Judgment (ECF Nos. 43, 44) are denied without prejudice to refiling.  The Clerk is **DIRECTED** to forward to James A. Coutinho, Bankruptcy Trustee, at the following address:

Allen Stovall Neuman & Ashton LLP
10 West Broad Street
Suite 2400
Columbus, OH 43215

a copy of Plaintiff's Complaint (ECF No. 1) and this Opinion and Order.  The trustee may have **THIRTY DAYS FROM THE DATE OF THIS ORDER** to pursue ratification, joinder, substitution, or none of these courses of action.  After 30 days, if the trustee has not pursued

---

*Northcutt v. Tennessee Dep't of Treasury*, No. 3:21-CV-00823, 2022 WL 1056419, at *3 (M.D. Tenn. Apr. 8, 2022) (citing *id*.).

[5] The Court also notes that Defendant Hertenstein, in arguing strictly for judgment as a matter of law, does not offer any meaningful argument addressed to issues such as delay or mistake, nor does he make any claim of prejudice.  Importantly, he acknowledges Plaintiff's receipt of a discharge of over $150,000, and notes, consistent with the Sixth Circuit's analysis in *Auday*, that requiring the trustee to bring the lawsuit "squares with the equitable aims of judicial estoppel." 698 F.3d 902, 905.  That is, while a debtor may have an incentive to hide claims in order to profit from them [him]self, a [t]rustee does not."  *Id.*

12

ratification, joinder or substitution, the Court will presume that the trustee has elected not to pursue any of those options and Defendants may renew their motions for summary judgment.

**IT IS SO ORDERED.**


Date: **February 28, 2024**              _**/s/ Elizabeth A. Preston Deavers**_
                                        **ELIZABETH A. PRESTON DEAVERS**
                                        **UNITED STATES MAGISTRATE JUDGE**