IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ANDREW CLUCK,

        Plaintiff,

   v.                                           Civil Action 2:22-cv-290

                                                   Magistrate Judge Elizabeth P. Deavers

BRENTLINGER ENTERPRISES, INC. dba
MIDWESTERN AUTO GROUP, *et al.*,

        Defendants.

**OPINION AND ORDER**

This matter is before the Court to consider several motions including a renewed motion for summary judgment filed by Defendants Brentlinger Enterprises dba Midwestern Auto Group ("MAG") and Kirby Morrow (ECF No. 54), a motion to stay discovery filed by MAG (ECF No. 55), and a motion for leave to amend the Complaint filed by Plaintiff Andrew Cluck (ECF No. 56). The Court addresses these motions as follows.

                                 I.       BACKGROUND

Plaintiff filed this action on January 25, 2022, asserting various employment-related claims under Title VII and Ohio law, including for discrimination, sexual harassment, hostile work environment, retaliation, and constructive discharge against Defendants MAG, Morrow, and Richard Hertenstein. (ECF No. 1.) He also asserts a claim for the intentional infliction of emotional distress. Plaintiff's claims arise from alleged discrimination based upon his Japanese heritage and the inappropriate conduct of Defendant Hertenstein. Plaintiff seeks compensatory and punitive damages as well as equitable relief. Plaintiff submitted as an exhibit to his Complaint a copy of his Notice of Right to Sue dated November 1, 2021. (ECF No. 1-1.)

Initially, Defendants MAG and Morrow moved for judgment on the pleadings, contending that Plaintiff's claims were barred by the doctrine of judicial estoppel because Plaintiff had failed to disclose his potential employment-related claims in his bankruptcy proceeding. Citing the then current state of the record, and drawing all reasonable inferences in Plaintiff's favor, the Court denied that motion without prejudice to the Defendants' ability to raise issue of judicial estoppel as appropriate at a later time. (Opinion and Order dated August 10, 2022, ECF No. 30.)

On September 2, 2022, the Court entered its Preliminary Pretrial Order. (ECF No. 33.) As relevant here, that Order established an amendment deadline of December 30, 2022, a discovery deadline of May 31, 2023, and a dispositive motion deadline of June 30, 2023. (*Id.*) All Defendants filed timely motions for summary judgment. (ECF Nos. 43, 44.) Defendants MAG and Morrow again asserted judicial estoppel. Defendant Hertenstein joined in that assertion and also argued that the bankruptcy trustee, and not Plaintiff, was the real party in interest.

On February 28, 2024, the Court issued an Opinion and Order concluding that, given the circumstances of Plaintiff's bankruptcy proceeding, the bankruptcy trustee was, in fact, the real party in interest. (ECF No. 53.) Accordingly, in its exercise of discretion, the Court denied without prejudice the motions for summary judgment and permitted the trustee thirty days to pursue ratification, joinder, substitution or none of those courses of action. (*Id.*) The Court advised the parties that, if after 30 days, the trustee had taken no action, the Court would presume that the trustee has elected not to pursue any of those options and Defendants could renew their motions for summary judgment. (*Id.*)

In that earlier Opinion and Order, the Court set forth the relevant undisputed facts as set forth in the record at that time. For context, the Court restates its previous discussion here.

Plaintiff filed this action on January 25, 2022, and attached a copy of his right to sue letter dated November 1, 2021. (ECF No. 1.) That right to sue letter related to an EEOC charge dated December 18, 2019. (ECF No. 43 at 72.) The EEOC charge reads as follows:

> I am an Asian-American of Japanese descent and identify as a Japanese-American male. I began working for Respondent in 2017 as Service Advisor. As of today, I am currently still employed by Respondent, but I have recently taken a Leave of Absence due to job-related stress conditions. In January 2019, Respondent promoted me to an Aftersales Manager. Soon after the promotion, I overheard my manager, Kirby Morrow – the Director of Fixed Operations – make several discriminatory statements regarding other ethnicities. For example, Mr. Morrow referred to clients as "Orientals" and expressed that he would not call back some of the Indian clients because "they can barely speak English."
>
> My race and national origin is not a topic I normally discuss while at work. In July 2019, Mr. Morrow was informed for the first time that I am Japanese. A week later, I was informed by another employee that Mr. Morrow intended to demote me. In August 2019, Mr. Morrow in fact demoted me back to a Service Advisor with no reasonable justification. Respondent demoted me and hired a Caucasian male, Rich Hertenstein, to take over my previous management position. Mr. Hertenstein therefore became my superior.
>
> Mr. Hertenstein soon began to sexually harass me and create a hostile working environment. On several occasions, Mr. Hertenstein grabbed my crotch (penis) and buttocks and laughed, telling me he did it as a "joke." I told Mr. Hertenstein that the touching was not welcomed yet he continued to do it. I also overheard Mr. Hertenstein refer to me as a "Jap," a controversial ethnic slur among Japanese Americans. I timely reported both Mr. Morrow and Mr. Hertenstein's conduct through Respondent's proper channels. Nothing was done by Respondent to correct their egregrious conduct.
>
> On November 8, 2019, Respondent demoted me again, this time to a Writer position where I would earn one-half of my original salary. On November 9, 2019, I requested a Leave of Absence due to the

> hostile work environment and discrimination I was facing during my employment with Respondent.
>
> I believe Respondent has discriminated against me due to my race and national origin, has sexually harassed me, and has retaliated against me for reporting such conduct because: (1) I was qualified to perform all the essential duties and functions for the position of Aftersales Manager, but I was unreasonably demoted from my position soon after Mr. Morrow discovered my race/national origin; (2) I was qualified to perform all the essential duties and functions for the position of Service Advisor, but I was unreasonably demoted from my position soon after my race/national origin was discovered, and I reported discriminatory treatment; (3) Mr. Hertenstein subjected me, on more than one occasion, to unwelcomed sexual touches and jokes that interfered with my work performance and created an intimidating, hostile and offensive work environment; and (4) Respondent is in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000 and Revised Code 4112.02(A), as it discriminated against me through demotion, harassment on the basis of race and national origin, sexual harassment and retaliation for engaging in protected activity

(*Id*.) Plaintiff's claims rely on the above allegations. As relevant to his constructive discharge claim, Plaintiff alleges in his Complaint that he was constructively discharged on November 12, 2019. (ECF No. 1 at ₽ 17.)

On November 15, 2019, Plaintiff filed a voluntary bankruptcy petition pursuant to Chapter 13 in the United States Bankruptcy Court for the Southern District of Ohio, Case No. 2:19-bk-57402. (ECF No. 43 at 13-71.) Plaintiff was represented by attorney Bryan C. Barch. (*Id.* at 51.) Plaintiff sought to discharge $145,733.00 in liabilities. (*Id*. at 20.) Question No. 33 on the Schedule A/B asked Plaintiff to identify "Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment. *Examples: Accident, employment disputes, insurance claims, or rights to sue."* (*Id*. at 25.) Plaintiff filled in the box indicating "No." (*Id*.)

On February 25, 2020, Plaintiff amended his bankruptcy schedules but did not amend his Schedule A/B to include the claims underlying this lawsuit. (ECF No. 43 at 74-85.) On August 3, 2020, Plaintiff converted his Chapter 13 filing to a Chapter 7 filing. (*Id*. at 95.) On August 8, 2020, Plaintiff again amended his bankruptcy schedules but did not amend his Schedule A/B to include the claims underlying this lawsuit. (*Id*. at 99-103.)

On September 10, 2020, a 341(c) hearing was conducted. (Affidavit of Attorney Bryan Barch, ECF No. 43 at 107, ₽ 2; *see also* ECF No. 20, "Barch Aff.") Plaintiff attended the hearing along with Mr. Barch and the bankruptcy trustee, attorney Jim Coutinho. (*Id*.) At the hearing, Mr. Coutinho questioned Plaintiff under oath

regarding his assets, liabilities, and other relevant matters. (*Id*. at ⁋ 3.) Plaintiff informed Mr. Coutinho of the then pending EEOC charge. (*Id*.) Mr. Coutinho "received testimony about the EEOC claim." (*Id.*) Following the hearing, Mr. Coutinho declined Mr. Barch's offer of additional information regarding Plaintiff's EEOC charge and stated, via email, that he was filing a "'no asset report.'" (*Id*. at ⁋ 4, Exhibit 1.)

The Bankruptcy Court docket entry dated September 18, 2020, states:

> Meeting of Creditors Held and Chapter 7 Trustee's Report of No Distribution: I, James A. Coutinho, having been appointed trustee of the estate of the above-named debtor(s), report that I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed R Bank P 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered. I request that I be discharged from any further duties as trustee. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 2 months. Assets Abandoned (without deducting any secured claims): $ 21959.00, Assets Exempt: $ 3750.00, Claims Scheduled: $ 153833.52, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): $ 153833.52 Debtor appeared. (Coutinho, James) (Entered: 09/18/2020)

(Case No. 2:19-bk-57402.) On November 18, 2020, the Bankruptcy Court entered the Order of Discharge. (ECF No. 43 at 105; *see also* Case No. 2:19-bk-57402, ECF No. 45.) On December 10, 2020, the Bankruptcy Court closed Plaintiff's case. (Case No. 2:19-bk-57402.)

(ECF No. 53 at 3-6.)

In concluding that the trustee was the real party interest based on the above facts, the

Court set forth the following analysis.

> … Because Defendant Hertenstein raises a threshold question," the Court turns first to the matter of the real party in interest. *Auday v. Wet Seal Retail, Inc.,* 698 F.3d 902, 904 (6th Cir. 2012).
>
> Causes of action existing before the commencement of a bankruptcy proceeding belong to the bankruptcy estate. 11 U.S.C. § 541(a)(1). And, debtors must "disclose

5

> any potential claim as an asset to the bankruptcy court in a schedule of assets and liabilities." *Davis v. Fiat Chrysler Autos. U.S., LLC*, 747 F. App'x 309, 314 (6th Cir. 2018); *see* 11 U.S.C. § 521. "[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." *In re Blasingame*, 986 F.3d 633, 638 (6th Cir. 2021) (citations omitted). Further, [w]hile § 541 dictates what interests are property of the estate pursuant to federal bankruptcy law, the "nature and extent of [the] property rights . . . are determined by the 'underlying [] substantive law.'" *Id*. (citations omitted).
>
> Ordinarily, discrimination claims accrue when the plaintiff knows or should know of the discrimination; that is, the claim accrues at the time of the discriminatory act. *Holmes v. Novo Nordisk Inc.*, No. 2:21-CV-1194, 2022 WL 950015, at *2 (S.D. Ohio Mar. 30, 2022) (involving, in part, state law discrimination claims under Ohio Rev. Code § 4112.01, *et seq*.); *see also Black v. Columbus Pub. Sch.*, 211 F. Supp. 2d 975, 980 (S.D. Ohio 2002), *aff'd,* 79 F. App'x 735 (6th Cir. 2003) (holding a cause of action under Title VII accrues, … at "the time of the *discriminatory act,* not the point at which the *consequences* of the act become painful."). Here, Plaintiff alleges acts of discrimination occurring no later than November 12, 2019. (ECF No. 1 at ¶ 45 alleging that Plaintiff "left work with MAG" on November 12, 2019.) With respect to his claim of intentional infliction of emotional distress, such a claim under Ohio law accrues when a Plaintiff "suffers severe emotional distress as a result of the defendant's wrongful actions." *Nilavar v. Mercy Health Sys.-W. Ohio*, 495 F. Supp. 2d 816, 821 (S.D. Ohio 2006), *aff'd,* 244 F. App'x 690 (6th Cir. 2007). Plaintiff alleges that his emotional distress claim arises from the actions of Defendant Hertenstein and, in part, led to his leaving MAG on November 12, 2019, never to return, because he was "severely depressed, depleted, and incapable of performing his job functions." (ECF No. 1, at ¶ 45; ¶¶ 72-77.)
>
> In short, the alleged actionable conduct occurred before Plaintiff filed his bankruptcy petition, and thus became property of the estate when he filed for bankruptcy three days later. As a result, absent abandonment, the trustee is the real party in interest here. *Kimberlin v. Dollar Gen. Corp.,* 520 F. App'x 312, 314 (6th Cir. 2013) (confirming that what is frequently characterized by courts as a standing problem "—whether a debtor or only a bankruptcy trustee has the right to prosecute legal claims related to the bankruptcy estate—is better characterized as a real-party-in-interest question governed by Rule 17."); *see also In re Bard*, 49 F. App'x 528, 529 (6th Cir. 2002) ("Upon conversion of the Chapter 13 bankruptcy proceeding into a Chapter 7 matter, the bankruptcy trustee became the real party-in-interest").

(*Id.* at 6-8.)

The Court acknowledged the following by way of footnote.

> The Court notes Plaintiff's attempt in his Response to recharacterize his claims as arising from an actual discharge date of February 4, 2020. (ECF No. 47 at 5 "Cluck was not terminated from his position with MAG **until February 4, 2020.**" (double

6

> emphasis supplied by Plaintiff)). Aside from the fact that such a contention may preclude a "constructive discharge" claim, it is wholly inconsistent with the allegations of Plaintiff's Complaint and Plaintiff has made no request to amend. Further, and significantly, as Defendant Hertenstein highlights, accepting February 4, 2020, as the accrual date of Plaintiff's claims would render baseless the underlying EEOC charge filed December 18, 2019.

(*Id.* at 7 n.2.)

When the trustee did not take any action, Defendants MAG and Morrow filed a renewed motion for summary judgment and a motion to stay discovery. (ECF Nos. 54, 55.) Plaintiff filed briefs in opposition and a motion to amend the complaint. (ECF Nos. 56, 57, 58.) All Defendants have opposed Plaintiff's motion to amend and the motion has been fully briefed. (ECF Nos. 59, 62, 63.) The motion for summary judgment and the motion to stay discovery are also fully briefed. (ECF No. 57, 58, 60, 61.)

It is with all of the above background in mind that the Court will consider these currently pending motions.

## II.    MOTION FOR LEAVE TO AMEND

### A.  Plaintiff's Motion

As the above discussion indicates, and as Plaintiff himself now apparently recognizes, the accrual date of his claims was critical to the Court's determination that the bankruptcy trustee is the real party in interest here. On this issue, Plaintiff currently seeks to amend his Complaint, explaining his intention to "add clarification about the date of [his] constructive termination." (ECF No. 56.) All Defendants have opposed any amendment, arguing that Plaintiff's attempt to shift the accrual date of his claims in an effort to avoid summary judgment is to no avail. Because, if the Court grants Plaintiff's motion, 'the original pleading no longer performs any function in the case'" and any dispositive motion would be denied as moot, the Court will consider the matter of amendment first. *See, e.g., Petty v. Bluegrass Celluar, Inc.*, No. 3:19-CV-

7

193-RGJ, 2022 WL 759538, at *2 (W.D. Ky. Mar. 10, 2022), *aff'd sub nom. Petty v. Bluegrass Cellular, Inc.,* No. 22-5254, 2023 WL 2754253 (6th Cir. Jan. 10, 2023) (recognizing that a court must consider a motion to amend before a dispositive motion).

As Defendants explain,[1] Plaintiff proposes to add two additional paragraphs to the Factual Background Section of his complaint. (*See* ECF Nos. 59, 62.) The two proposed additional paragraphs state as follows:

> 46. On November 12, 2019, Cluck left MAG on approved FMLA leave.
>
> 47. Mr. Cluck remained on leave of absence from MAG until his leave expired on February 4, 2020. After which, MAG officially terminated Cluck's employment on February 22, 2020.

(*Id.*)

Beyond these Defendant-identified amendments, the Court's own review reveals that Plaintiff also proposes to modify the language of Paragraph 17 in his Factual Background section. That Paragraph originally stated:

> 17. Mr, Cluck was continuously employed by Defendant MAG from August 2017 until his constructive discharge on November 12, 2019.

Plaintiff now proposes the following language:

> 17. Mr. Cluck was continuously employed by Defendant MAG from August 2017 until he was officially discharged from the company on February 22, 2020.

### B. Legal Standard

As discussed above, the deadline to amend pleadings as agreed upon by the parties and

---

[1] Plaintiff, in his four-paragraph motion, did not identify the proposed "clarifying" amendments for the Court's consideration. Nor did he challenge Defendants' representations regarding his proposed amendments in his reply brief.

established by the Court was December 30, 2022. (ECF No. 33.) Plaintiff's motion was filed on May 8, 2024, nearly seventeen months later. Although Federal Rule of Civil Procedure 15(a) governs amendments to the pleadings, when a motion to amend is brought after the deadline set within the Court's scheduling order, a party must satisfy the standards of both Rule 15(a) and 16(b)(4). *Korn v. Paul Revere Life Ins. Co.*, 382 F. App'x 443, 449 (6th Cir. 2010) (citing *Leary v. Daeschner*, 349 F.3d 888, 905–09 (6th Cir. 2003)).

"Once the scheduling order's deadline to amend the complaint passes, ... a plaintiff *first* must show good cause under Rule 16(b) for failure earlier to seek leave to amend and the district court must evaluate prejudice to the nonmoving party before a court will [even] consider whether amendment is proper under Rule 15(a)." *Commerce Benefits Grp. Inc. v. McKesson Corp*, 326 F. App'x 369, 376 (6th Cir. 2009) (internal quotation marks and citation omitted) (emphasis added); *cf. Johnson v. Metro. Gov't of Nashville & Davidson Cnty.*, Nos. 10-6102 & 11-5174, 2012 WL 4945607, at *17 (6th Cir. Oct. 18, 2012) ("Rule 15 is augmented by Rule 16, which states that the generally wide latitude to amend may be restricted by the court's other scheduling orders.").

Under Rule 16(b)(4), the Court will modify a case scheduling "only for good cause ...." Fed. R. Civ. P. 16(b)(4). The party seeking modification of the case schedule has the "obligation to demonstrate 'good cause' for failing to comply with the district court's scheduling order ...." *Pittman ex rel. Sykes v. Franklin*, 282 F. App'x 418, 425 n.5 (6th Cir. 2008). In determining whether good cause exists, the primary consideration "is the moving party's diligence in attempting to meet the case management order's requirements." *Commerce*, 326 F. App'x at 377 (internal quotation marks and citation omitted); *see also Leary*, 349 F.3d at 906 (quoting 1983 advisory committee notes to Fed. R. Civ. P. 16) ("But a court choosing to modify the schedule upon a showing of good cause, may do so only 'if it cannot reasonably be met despite the

9

diligence of the party seeking the extension.' "). Finally, the Court must also consider "potential prejudice to the nonmovant...." *Leary*, 349 F.3d at 909. Even if an amendment would not prejudice the nonmoving party, a plaintiff must still provide good cause for failing to move to amend by the Court's deadline. *Korn v. Paul Revere Life Ins. Co.*, 382 F. App'x 443, 450 (6th Cir. 2010); *see also Wagner v. Mastiffs*, Nos. 2:08-cv-431, 2:09-cv-0172, 2011 WL 124226, at *4 (S.D. Ohio Jan. 14, 2011) ("[T]he absence of prejudice to the opposing party is not equivalent to a showing of good cause.").

If the proponent of a belated amendment demonstrates good cause under Rule 16(b)(4), a court will then evaluate the proposed amendment under Rule 15(a). *Commerce*, 326 F. App'x at 376. Pursuant to Rule 15(a), the Court should freely grant a party leave to amend his or her pleadings "when justice so requires." Fed. R. Civ. P. 15(a). Rule 15(a) sets forth "a liberal policy of permitting amendments to ensure the determination of claims on their merits." *Oleson v. United States*, 27 F. App'x 566, 569 (6th Cir. 2001) (internal quotations omitted). As the United States Court of Appeals for the Sixth Circuit has noted, "[f]actors that may affect [a Rule 15(a)] determination include undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendment, undue prejudice to the opposing party, and futility of the amendment." *Seals v. Gen. Motors Corp.*, 546 F.3d 766, 770 (6th Cir. 2008). In determining prejudice, the Court examines "whether the assertion of the new claim would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction." *Phelps v. McLellan*, 30 F.3d 658, 662–63 (6th Cir. 1994).

C. Analysis

As noted, Defendants argue only in terms of futility under Rule 15. As explained below, however, the Court does not reach that issue here. Instead, consistent with the above authority, the untimeliness of Plaintiff's motion precludes any need for the Court's consideration of it.

There is no need for a lengthy analysis here. Plaintiff wholly fails to acknowledge the untimeliness of his motion to amend. Not surprisingly, Plaintiff correspondingly fails to set forth good cause for modifying the case schedule as required by Rule 16(b)(4). Plaintiff also gives no consideration to the idea that, given the current case posture, the issue of prejudice to Defendants warrants more than a conclusory mention. These failures are fatal to Plaintiff's attempt to amend.

It bears emphasis that Plaintiff has missed the amendment deadline not by a brief period of time ***but by nearly a year and a half***. And, Plaintiff's casual approach to Court ordered deadlines fails to recognize that

> … deadlines are important things. And when the Court establishes deadlines, the parties are obliged to follow them." *Century Indem. Co. v. Begley Co.*, 323 F.R.D. 237, 239 (E.D. Ky. 2018). "Scheduling orders are critical in moving cases to a just outcome in an efficient manner. In order to accomplish this end, deadlines 'must have teeth' and must be enforced by the courts." *Birge v. Dollar General Corp.*, 2006 WL 133480, at *1 (W.D. Tenn. Jan. 12, 2006) (citations and quotation marks omitted).

*In re Onglya (Saxagliptin) & Kombiglyze XR (Saxagliptin & Metformin) Prod. Liab. Litig.*, 570 F. Supp. 3d 501, 506 (E.D. Ky. 2021), *objections overruled sub nom. In re Onglyza*, No. 5:18-MD-2809-KKC, 2021 WL 5410242 (E.D. Ky. Mar. 19, 2021); *see also In re Onglyza (Saxagliptin) & Kombiglyze XR (Saxagliptin & Metformin) Prod. Liab. Litig.*, 570 F. Supp. 3d 473, 476–77 (E.D. Ky. 2020) (quoting *Birge*, 2006 WL 133480, at *1) ("'a court's scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded ...

without peril...."); *Edwards v. Grand Rapids Cmty. Coll.,* No. 1:09-CV-1067, 2010 WL 2163823, at *2 (W.D. Mich. May 27, 2010) ("a court's case management order is not ... a meaningless piece of paper that a party may ignore at his whim.").

Given this record, Plaintiff simply has made no showing of diligence. For this reason, Plaintiff has failed to meet the good cause requirement under Rule 16(b) and the Court need not address whether leave to amend is appropriate under Rule 15(a). Accordingly, Plaintiff's Motion for Leave to Amend the Complaint (ECF No. 56) is **DENIED.** Consistent with this ruling, the operative complaint remains Plaintiff's original complaint filed on January 25, 2022. (ECF No. 1.)

### III. RENEWED SUMMARY JUDGMENT MOTION

The Court now turns to the renewed summary judgment filed by Defendants MAG and Morrow. These Defendants again argue that the bankruptcy trustee, and not Plaintiff, is the real party in interest here based on an accrual date for Plaintiff's claims prior to his bankruptcy filing. Alternatively, they contend that, if Plaintiff more properly is considered to be the real party in interest, his claims are barred by judicial estoppel.

For his part, Plaintiff asserts indirectly that the bankruptcy trustee is not the real party in interest by arguing that his constructive discharge claim accrued after the bankruptcy filing and, therefore, did not require the trustee's abandonment. Beyond this, Plaintiff argues, anticipatorily as he describes it, that his state law claims are subject to a six-year statute of limitations and do not require his receipt of a right to sue letter. Finally, Plaintiff asserts that judicial estoppel is not applicable in this case because he advised the bankruptcy trustee of his EEOC filing during the 341 meeting.

### A. Legal Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion"). "Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, 439 F. App'x 492, 495–96 (6th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); see also Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, ... there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

### B. Analysis

As before, because the matter of the real party interest is a threshold question, the Court will begin its analysis of the issues raised by the renewed summary judgment motion there. In its earlier Opinion and Order, the Court, based on the very limited record before it at that time, concluded that all of Plaintiff's claims accrued prior to his bankruptcy filing on November 15, 2019.

As noted, in response to the renewed motion, Plaintiff appears to challenge the Court's earlier conclusion but only as to the issue of his alleged discharge from MAG, a matter which, consistent with authority, he asserted as an independent claim and not as an adverse action in support of his other claims.[2] *Green v. Brennan*, 578 U.S. 547, 559 (2016) ("constructive discharge is a claim distinct from the underlying discriminatory act"). He also alleged that his constructive discharge date was November 12, 2019, and that he had resigned, this latter allegation addressed to a central element of such a claim. *Id*. at 562 ("For a constructive discharge, the claim does not exist until the employee resigns.").

To confirm the Court's view that Plaintiff's response to the renewed summary judgment motion is limited to the matter of his discharge, the Court restates verbatim the entirety of his discussion as to the nature of his claim. As Plaintiff explains

> In the case at hand, Mr. Cluck was terminated from his employment at least four weeks after he filed his bankruptcy petition. On November 12, 2019, Cluck left MAG on approved FMLA leave. On November 15, 2019, Cluck filed for bankruptcy. On December 18, 2019, he filed his EEOC charge. In the charge, he indicates that he was still employed with MAG but was on a "leave of absence." (ECF 43).
>
> After Cluck's FMLA leave expired and Cluck chose not to come back to work, MAG terminated his employment. Cluck's FMLA leave expired on February 4, 2020. In

---

[2] Plaintiff muddles this distinction in some of his briefing. For example, in his reply in support of his motion to amend, he refers to his constructive discharge as "the ultimate adverse action." (ECF No. 63 at 1.)

14

> the termination letter to Cluck, MAG wrote "MAG will consider your acceptance of this new employment as a voluntary resignation from employment with MAG." (Exhibit 1). Therefore, the earliest date of Cluck's termination is some point after December 18, 2019 when he indicated he was still employed in his EEOC charge. He did not receive his official termination letter until February 21, 2020. All of these dates fall after the date he filed for bankruptcy and therefore his termination was not a part of the bankruptcy estate. There would be no requirement for the trustee to abandon claims that are not part of the estate.

(ECF No. 57 at 5-6.)

In support of his position, Plaintiff has attached to his response a copy of what he deems his "termination letter." This letter is not presented as a sworn affidavit or declaration. Nevertheless, it touches on an issue raised by Defendants over various rounds of briefing and as an affirmative defense in Defendant MAG and Morrow's Answer – that Plaintiff's claim is barred "to the extent [it] exceeds the scope of Plaintiff's respective administrative charges." (ECF No. 16 at ¶ 89.) It further implicates the allegation in that same Answer that "Plaintiff was terminated for failing to return to work at the end of his twelve-week FMLA leave on February 4, 2020." (*Id.* at ¶ 17.)

This case is at the renewed summary judgment stage. Overall, the record remains limited as to the specifics of Plaintiff's discharge claim and, by extension, the accrual date of that particular claim. The renewed briefing has done little to change that, and as explained, has instead raised questions. For this reason, the Court **DIRECTS** the parties to submit, **WITHIN FOURTEEN DAYS OF THE DATE OF THIS ORDER**, supplemental briefing addressed to the following issues:

(1) Whether the "termination letter" as submitted satisfies the requirements of Rule 56(e);

(2) The precise nature of Plaintiff's discharge claim with specific citation and discussion of its elements and, given those elements, its accrual date; and

(3) Whether that claim is beyond the scope of Plaintiff's EEOC charge filed on December 18, 2019.

15

## IV. THE MOTION TO STAY DISCOVERY

Finally, the Court turns first to MAG's motion to stay discovery. The motion (ECF No. 55) is **GRANTED**. Again, by Preliminary Pretrial Order dated September 2, 2022, this Court set a case schedule, including a discovery deadline of May 31, 2023. (ECF No. 33.) Thus, any current discovery is untimely. Of course, this Court has the ability to modify a case schedule for good cause. *See* Fed. R. Civ. P. 16(b)(4). But, to the extent that the Court could construe Plaintiff's response as a motion to extend the discovery deadline, Plaintiff must demonstrate that such good cause exists. *FIP Realty Co. v. Ingersoll-Rand plc,* No. 2:19-CV-3291, 2020 WL 6060412, at *4 (S.D. Ohio Oct. 14, 2020). As with his motion seeking to amend, Plaintiff has made no effort to do so here.

## V.

For the reasons stated above, Plaintiff's Motion for Leave to Amend the Complaint (ECF No. 56) is **DENIED.** The parties are **DIRECTED** to submit, **WITHIN FOURTEEN DAYS OF THE DATE OF THIS ORDER**, supplemental briefing addressed to the following issues as they relate to the renewed motion for summary judgment:

(1) Whether the "termination letter" as submitted satisfies the requirements of Rule 56(e);

(2) The precise nature of Plaintiff's discharge claim with specific citation and a meaningful analysis of its elements and, given those elements, its accrual date; and

(3) Whether Plaintiff's discharge claim is beyond the scope of the EEOC charge filed on December 18, 2019.

The motion to stay discovery (ECF No. 55) is **GRANTED.**

**IT IS SO ORDERED.**


**Date: November 12, 2024**             */s/ Elizabeth A. Preston Deavers*
                                        **ELIZABETH A. PRESTON DEAVERS**
                                        **UNITED STATES MAGISTRATE JUDGE**

17