## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

ANDREW CLUCK,

      Plaintiff,

v.                                                Civil Action 2:22-cv-290

                                                       Magistrate Judge Elizabeth P. Deavers

BRENTLINGER ENTERPRISES, INC. dba
MIDWESTERN AUTO GROUP, *et al.*,

      Defendants.

## OPINION AND ORDER

This matter is before the Court to consider the renewed motion for summary judgment filed by Defendants Brentlinger Enterprises dba Midwestern Auto Group (misidentified as Brentlinger Enterprises, Inc. in the Complaint) ("MAG") and Kirby Morrow following supplemental briefing as ordered by the Court. For the following reasons, the renewed motion for summary judgment (ECF No. 54) is **GRANTED.**

### I.

Plaintiff filed this action on January 25, 2022, asserting various employment-related claims under Title VII and Ohio law, including for discrimination, sexual harassment, hostile work environment, retaliation, and a stand-alone claim for constructive discharge against Defendants MAG, Morrow, and Richard Hertenstein. (ECF No. 1.) He also asserts a claim for the intentional infliction of emotional distress. Plaintiff's claims arise from alleged discrimination based upon his Japanese heritage and the inappropriate conduct of Defendant Hertenstein. Plaintiff seeks compensatory and punitive damages as well as equitable relief. Plaintiff submitted as an exhibit to his Complaint a copy of his Notice of Right to Sue letter dated November 1, 2021. (ECF No. 1-1.)

1

Initially, Defendants MAG and Morrow moved for judgment on the pleadings, contending that Plaintiff's claims were barred by the doctrine of judicial estoppel because Plaintiff had failed to disclose his potential employment-related claims in his bankruptcy proceeding. Citing the then current state of the record, and drawing all reasonable inferences in Plaintiff's favor, the Court denied that motion without prejudice to the Defendants' ability to raise issue of judicial estoppel as appropriate at a later time. (Opinion and Order dated August 10, 2022, ECF No. 30.)

On September 2, 2022, the Court entered its Preliminary Pretrial Order. (ECF No. 33.) As relevant here, that Order established a dispositive motion deadline of June 30, 2023. (*Id*.) All Defendants filed timely motions for summary judgment. (ECF Nos. 43, 44.) Defendants MAG and Morrow again asserted judicial estoppel. Defendant Hertenstein joined in that assertion and also argued that the bankruptcy trustee, and not Plaintiff, was the real party in interest.

On February 28, 2024, the Court issued an Opinion and Order concluding that, given Plaintiff's claims as alleged, they accrued prior to the bankruptcy filing such that the bankruptcy trustee was, in fact, the real party in interest. (ECF No. 53.) Accordingly, in its exercise of discretion, the Court denied without prejudice the motions for summary judgment and permitted the trustee thirty days to pursue ratification, joinder, substitution or none of those courses of action. (*Id*.) The Court advised the parties that, if after 30 days, the trustee had taken no action, the Court would presume that the trustee has elected not to pursue any of those options and Defendants could renew their motions for summary judgment. (*Id*.)

When the trustee did not take any action, Defendants MAG and Morrow filed a renewed motion for summary judgment. (ECF Nos. 54.) Plaintiff opposed that motion and moved to

2

amend the complaint. (ECF Nos. 56, 57.) By Opinion and Order dated November 12, 2024, the Court denied Plaintiff's untimely motion for leave to amend and ordered supplemental briefing on issues raised by the parties' filings. (ECF No. 64.) The parties submitted their supplemental briefs on November 26, 2024. (ECF Nos. 65, 66.) Defendant Hertenstein did not file a renewed motion for summary judgment and has not submitted supplemental briefing.

## II.

Some more detailed background is necessary here. In his Complaint, Plaintiff, proceeding through counsel, explicitly alleged his constructive discharge on November 12, 2019. (ECF No. 1 at ¶ 17; *see also* ¶ 45.) In asserting an independent cause of action for constructive discharge under both federal and Ohio law, he alleged, in conclusory fashion without any additional factual surrounding detail, that he resigned. (*Id*. at ¶ 82.) In the initial round of summary judgment briefing, Plaintiff did not meaningfully respond to Defendant Hertenstein's argument that the bankruptcy trustee was the real party in interest based on the accrual date of Plaintiff's claims as alleged. (ECF No. 53 at n.2.) It was not until his response to the renewed summary judgment motion that Plaintiff attempted to address the accrual date of his claims. He did so in two ways. First, he filed his untimely motion for leave to amend, seeking to assert, *inter alia*, an "official[] discharge[]" date of "February 22, 2020." (ECF No. 64 at 8; *see also* ECF No. 56-1 at ¶ 17.) Second, he responded to the renewed motion for summary judgment, attaching a copy of a document he deemed his "termination letter." (ECF No. 57-1.) That "termination letter," directed to Plaintiff and dated February 21, 2020, stated, in relevant part:

> This letter is sent to notify you that your 12 weeks of Family Medical Leave Act (FMLA) expired as of February 4, 2020. MAG has not heard from you in a while; nor have we received notice from your doctor or a request from you to extend your leave. MAG has also learned that you have accepted and are working in a position with Carl Hogan Toyota in Columbus, Mississippi. MAG will consider your

3

> acceptance of this new employment as a voluntary resignation from employment with MAG.

(ECF No. 57-1).

Relying on that letter, Plaintiff explained the accrual date of his claims in this way:

> In the case at hand, Mr. Cluck was terminated from his employment at least four weeks after he filed his bankruptcy petition. On November 12, 2019, Cluck left MAG on approved FMLA leave. On November 15, 2019, Cluck filed for bankruptcy. On December 18, 2019, he filed his EEOC charge. In the charge, he indicates that he was still employed with MAG but was on a "leave of absence." (ECF 43). After Cluck's FMLA leave expired and Cluck chose not to come back to work, MAG terminated his employment. Cluck's FMLA leave expired on February 4, 2020. In the termination letter to Cluck, MAG wrote "MAG will consider your acceptance of this new employment as a voluntary resignation from employment with MAG." (Exhibit 1). Therefore, the earliest date of Cluck's termination is some point after December 18, 2019 when he indicated he was still employed in his EEOC charge. He did not receive his official termination letter until February 21, 2020. All of these dates fall after the date he filed for bankruptcy and therefore his termination was not a part of the bankruptcy estate. There would be no requirement for the trustee to abandon claims that are not part of the estate.

(ECF No. 57 at 5-6.)

Noting the lack of clarity surrounding Plaintiff's constructive discharge claim and the scant record even at the renewed summary judgment stage, the Court ordered supplemental briefing. As the Court stated:

> This case is at the renewed summary judgment stage. Overall, the record remains limited as to the specifics of Plaintiff's discharge claim and, by extension, the accrual date of that particular claim. The renewed briefing has done little to change that, and as explained, has instead raised questions. For this reason, the Court **DIRECTS** the parties to submit, **WITHIN FOURTEEN DAYS OF THE DATE OF THIS ORDER**, supplemental briefing addressed to the following issues:
>
> (1) Whether the "termination letter" as submitted satisfies the requirements of Rule 56(c[1]);
>
> (2) The precise nature of Plaintiff's discharge claim with specific citation and a meaningful analysis of its elements and, given those elements, its accrual date; and

---

[1] Inadvertently cited as Fed.R.Civ.P. 56(e).

4

(3) Whether Plaintiff's discharge claim is beyond the scope of the EEOC charge filed on December 18, 2019.

The parties have addressed these issues in their supplemental briefing, not surprisingly, setting forth opposing positions. Because Plaintiffs' explanation of his discharge claim is dispositive here, the Court limits its discussion to that question. In doing so, the Court will assume that Plaintiff's "termination letter" is properly before it.

### III.

Plaintiff, continuing to rely on his "termination letter," now describes his constructive discharge claim in this way:

> In this case, MAG deliberately created intolerable working conditions for Mr. Cluck through a combination of discriminatory actions, racially motivated hostility, and repeated instances of sexual harassment. After Mr. Cluck's promotion to HL Service Manager in January 2019, his manager, Kirby Morrow, made offensive comments about individuals of Asian descent and displayed discriminatory attitudes toward customers with accents, referring to them with derogatory slurs (Doc # 1, ¶¶ 22–23). These behaviors escalated after Mr. Morrow learned of Mr. Cluck's Japanese national origin in July 2019. Shortly thereafter, Mr. Morrow expressed intentions to terminate Mr. Cluck without justification (¶¶ 25–26). When confronted, Morrow denied his statements but ultimately demoted Mr. Cluck and tasked him with training his replacement, Defendant Richard Hertenstein, who perpetuated a similarly hostile and discriminatory environment (¶¶ 27, 32–33). The demotion, coupled with Morrow's racially motivated actions, signaled MAG's willingness to tolerate and perpetuate discrimination against Mr. Cluck.
>
> The intolerable conditions worsened with the repeated sexual harassment by Defendant Hertenstein, who groped Mr. Cluck's crotch and buttocks on multiple occasions, dismissing the conduct as a "joke" (¶¶ 35–36, 41). Despite Mr. Cluck reporting this misconduct to MAG's HR manager, Melissa Church, and later to Chairman and CEO Mark Brentlinger, MAG failed to conduct an adequate investigation or take corrective action (¶¶ 34, 39–40). Instead, MAG responded by demoting Mr. Cluck a second time, further isolating and demeaning him (¶ 44). This retaliation compounded the effects of the harassment, which left Mr. Cluck embarrassed, anxious, and unable to perform his job (¶¶ 38, 45). The employer's deliberate failure to address Mr. Cluck's complaints, coupled with its punitive responses to his reports of harassment and discrimination, created conditions so egregious that no reasonable employee could be expected to endure them.

5

> On November 12, 2019, Mr. Cluck left MAG on approved FMLA leave, and on November 15, 2019, he filed for bankruptcy. While on leave, he filed an EEOC charge on December 18, 2019, and explicitly stated in the charge that he was still employed with MAG but on a "leave of absence" (ECF 43). At this point, Mr. Cluck's relationship with MAG was characterized by unresolved tension, but his employment was ongoing.
>
> Mr. Cluck's FMLA leave expired on February 4, 2020, and he subsequently found new employment. When he did not return to work, MAG sent him a termination letter stating, "MAG will consider your acceptance of this new employment as a voluntary resignation from employment with MAG" (Doc # 57-1). This letter marked a pivotal moment in Mr. Cluck's claim, as it signified MAG's intent to treat his absence as a resignation. Notably, this decision by MAG aligns with principles established in *Green v. Brennan*, which held that a constructive discharge claim accrues when the employee provides definite notice of resignation. 578 U.S. at 555. Here, MAG's termination letter constitutes an acknowledgment of Mr. Cluck's "resignation," triggering the accrual of his claim on or after February 4, 2020.

(ECF No. 65 at 5-6.)

This discussion confirms that Plaintiff's view of his discharge claim, and by extension its accrual date, has again shifted. In this late-stage iteration, Plaintiff's view is as follows. As now explained, Plaintiff is asserting a constructive discharge theory as a means to establish an adverse action supporting his discrimination, sexual harassment, hostile work environment, and retaliation claims. His revised alleged constructive discharge date is February 4, 2020, a date after the bankruptcy filing. Thus, according to Plaintiff, his claims are not part of the bankruptcy estate, preventing the trustee from being the real party in interest as the Court previously concluded.

There is a problem with Plaintiff's most recently articulated constructive discharge theory to the extent he now relies on it to extend the accrual date of his claims. To be sure, "[a] constructive-discharge claim 'has two basic elements': (1) an employer must engage in such intolerable discriminatory conduct that a reasonable person would feel compelled to resign and (2) the employee must actually resign." *Green v. Brennan*, 578 U.S. 547, 136 (2016). Further,

6

"[f]or a constructive discharge, the claim does not exist until the employee resigns." *Id.* at 562. Setting aside whether the circumstances Plaintiff describes confirm his resignation, Plaintiff's allegations of constructive discharge as now explained clearly are his attempt to assert a claim consistent with the authority of *Green*. Unfortunately for Plaintiff, his late in the game refined articulation of his claim is at odds with the allegations in his Complaint.

In his Complaint, Plaintiff asserted constructive discharge as an independent cause of action and explicitly alleged, as part of his factual background, a constructive discharge date of November 12, 2019.[2] (ECF No. 1 at ¶ 17; *see also* ¶ 45.) That Plaintiff now has changed the theory of his discharge claim is "fatal" to his claim. *Shabazz v. ICWU Ctr. for Worker Health & Safety Educ.,* No. 1:18-CV-339, 2021 WL 6197402, at *11 (S.D. Ohio Dec. 30, 2021). Fundamentally, a "'[p]laintiff cannot change its theory of the case in an effort to avoid summary judgment *after* Defendant moves for summary judgment.'" *Id.* (quoting *Vaughn v. City of Lebanon,* 18 F. App'x 252 (6th Cir. 2001) (emphasis in original)). Fed.R.Civ.P. 8 "requires … that the complaint give the defendant fair notice of the claim and its supporting facts."

---

[2] As noted, in his Complaint, Plaintiff asserted constructive discharge as an independent cause of action. (ECF No. 1 "Claim Six.") Importantly, "constructive discharge" is not an independent cause of action under either federal or Ohio law. *Donnelly v. Health Mgmt. Sols., Inc.,* No. 2:19-CV-5303, 2022 WL 22883109, at *3 (S.D. Ohio Feb. 8, 2022); *see also Guy v. Bd. of Educ. Rock Hill Loc. Sch. Dist.,* No. 1:18-CV-893, 2020 WL 2838508, at *8 (S.D. Ohio May 31, 2020); *Ritter v. Bd. of Educ. of Arcadia Loc. Sch.*, 535 F. Supp. 3d 690, 694 (N.D. Ohio 2021); *Cox v. Hausmann*, No. 3:17-CV-02420, 2020 WL 5814476, at *5, n. 6 (N.D. Ohio) Instead it is a "means of proving the element of an adverse employment action where the employee quits instead of being fired" for an employment discrimination claim. *Id.* (citing *Guy*, 2020 WL 2838508, at *8 ("Constructive discharge from employment is not itself a cause of action. First, there must exist an underlying cause of action for employment discrimination.")). Thus, to the extent Plaintiff asserts constructive discharge as a stand-alone claim, that independent claim would be subject to dismissal regardless of any alleged accrual date.

*E.E.O.C. v. J.H. Routh Packing Co.,* 246 F.3d 850, 854 (6th Cir. 2001). Thus, courts routinely conclude that a Plaintiff may not expand his claims in opposition to summary judgment. *Johnstone v. CrossCountry Mortg., LLC*, No. 1:22-CV-01111, 2025 WL 89997, at *5–6 (N.D. Ohio Jan. 14, 2025) (citing *Davis v. Echo Valley Condo. Ass'n*, 945 F.3d 483, 496 (6th Cir. 2019), *cert. denied*, ––– U.S. –––, 141 S. Ct. 162 (2020) (plaintiff was precluded from raising new claim at summary judgment where she failed to raise claim in complaint and failed to adequately request leave to amend); *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) (plaintiff could not expand claims to assert new theories in response to summary judgment or on appeal). "[I]f the plaintiff raises the new claims for the first time in the summary-judgment briefing, it generally subjects a defendant to unfair surprise, because the defendant has no opportunity to investigate the claim during discovery." *Davis*, 945 F.3d at 496 (quotations omitted); *see also Lally v. BP Prods. N. Am., Inc.*, 615 F. Supp. 2d 654, 659 (N.D. Ohio 2009) (plaintiffs could not expand scope of subject property in their opposition to summary judgment motion where defendant did not have opportunity to do discovery on additional parcels); *Sutton v. Ohio Dep't of Rehab. & Corr.*, No. 3:21 CV 962, 2023 WL 4564385, at *5 n.4 (N.D. Ohio July 17, 2023) (plaintiff's "use of her opposition brief to introduce new facts to support these claims falls afoul of the accepted standard of fairness")).

Accordingly, plaintiffs "'who seek to raise new claims at the summary-judgment stage must first move to amend their pleadings under Federal Rule of Civil Procedure 15(a) before asserting the claims in summary-judgment briefing.'" *Johnstone*, 2025 WL 89997, at *5–6 (quoting *Davis*, 945 F.3d at 496 (citations omitted); *see also Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (affirming district court's refusal to consider claim first raised at summary judgment when new claim had not been pled, nothing in

8

complaint put defendants on notice, and plaintiff had information for claim when she filed complaint but did not include it or seek leave to amend)).

Plaintiff has not amended his Complaint to assert a constructive discharge theory based on an alleged resignation date of February 4, 2020. To be sure, Plaintiff moved to amend. But the Court denied that motion as untimely ***by nearly a year and a half***. (ECF No. 64 at 11) (emphasis in original). Further, as the Court discussed in denying the motion, Plaintiff utterly failed to address his diligence in attempting to meet the Court-ordered amendment deadline. (*Id.*)

Moreover, as detailed by the Court in its previous Opinion and Order, Plaintiff did not move to amend to assert his claims in the way he now articulates them at this late stage. Instead, in moving to amend, he sought to allege his "official[] discharge[]" from MAG on February 22, 2020. (ECF No. 64 at 8; ECF No. 56-1 at ¶ 17.) He did not propose to identify his "official discharge" as either a constructive discharge or his resignation as of February 4, 2020. Rather, he proposed language stating that "MAG officially terminated Cluck's employment on February 22, 2020."[3] (*Id.*; *see also* ECF No. 56-1 at ¶ 47.) This was so despite Plaintiff's recent acknowledgment in his supplemental briefing that he had been in possession of the MAG letter on which he now relies ***no later than*** the initial disclosures date. (ECF No. 65 at 2 "MAG produced the termination letter as part of its initial disclosures ….") That date, as set forth in the

---

[3] Interestingly, Plaintiff's choice of proposed language suggests "an actual termination, which is always effected through an official act of the company" whereas "a constructive discharge need not be." *Schuette v. Jackson Cnty.,* No. CV 18-10497, 2023 WL 1453133, at *3 (E.D. Mich. Feb. 1, 2023) (quoting *Pennsylvania State Police v. Suders,* 542 U.S. 129, 137 (2004)). Plaintiff was similarly imprecise with his language in his response to the renewed summary judgment motion (ECF No. 57), in part prompting the Court's solicitation of supplemental briefing.

Preliminary Pretrial Order was August 24, 2022. (ECF No. 33.)[4] Assuming that to be Plaintiff's first possession date of the letter, that date was still *four months* before the amendment deadline and roughly *21 months* before he actually moved for leave to amend his Complaint. Further, and significantly, again accepting August 24, 2022, as the first date of receipt, Plaintiff had been in possession of this letter for nearly *ten months* when he filed his response (ECF No. 47 filed June 2, 2023) to Mr. Hertenstein's initial summary judgment motion (ECF No. 44 filed on May 8, 2023) putting the accrual date of Plaintiff's claims at issue.

And, importantly, in his proposed amended complaint, Plaintiff continued to assert constructive discharge as an independent cause of action and did not reframe it as a means of proving the element of an adverse employment action as to his other claims. Notably, Plaintiff is represented by counsel and not entitled to the less stringent pleading standard that applies to *pro se* litigants. *Harvey v. Great Seneca Fin. Corp.,* 453 F.3d 324, 329 (6th Cir. 2006). Under the circumstances here, to allow Plaintiff to assert a new constructive discharge date based on his revised theory of the case would amount to a constructive amendment. *Wheeler v. City of Columbus,* No. 2:16-CV-1159, 2019 WL 3753579, at *8 (S.D. Ohio Aug. 8, 2019). The Court declines to allow Plaintiff "two bites at the apple," or three, or four, in this instance. *Id.* (citing *Harvey*, at 329).

For these reasons, Plaintiff has failed to raise a genuine issue of material fact regarding the accrual date of his claims. As the Court previously concluded, based on the allegations of the

---

[4] Indeed, Plaintiff may have been in receipt of this letter directed to him and dated February 21, 2020, much earlier than the initial stages of this lawsuit. There is nothing in the record confirming that he did not receive the letter as mailed to him. Thus, to be clear, the initial disclosure deadline of August 24, 2022, is likely the latest date Plaintiff came into possession of the letter, if not plausibly before, and even as early as when he filed the original Complaint. (ECF No. 33.)

Complaint, Plaintiff's claims accrued no later than November 12, 2019, a date prior to the filing of his bankruptcy petition, making them property of the estate and the trustee the real party in interest. The trustee has declined to pursue ratification, joinder, or substitution. Accordingly, the renewed motion for summary judgment filed by Defendants MAG and Morrow is **GRANTED**.

### IV.

For the reasons stated above, the renewed motion for summary judgment (ECF No. 54) filed by Defendants MAG and Morrow is **GRANTED**. The Court will hold a conference on **MARCH 6, 2025** at **11:00 A.M**. The parties are **DIRECTED** to call **1-551-285-1373** and enter Zoom Meeting ID **161-603-4081#**. The Participant ID and Meeting Passcode are both **581746#.**

**IT IS SO ORDERED.**

**Date: February 21, 2025**                              */s/ Elizabeth A. Preston Deavers*
                                                                           **ELIZABETH A. PRESTON DEAVERS**
                                                                           **UNITED STATES MAGISTRATE JUDGE**